Thiago Coelho (SBN 324715)
thiago@wilshirelawfirm.com
Cinela Aziz (SBN 318192)
cinela@wilshirelawfirm.com
Jessica Behmanesh (SBN 336128)
jbehmanesh@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Class*

<div align="center">

**UNITED STATED DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

</div>

| | |
|---|---|
| ANDREA KEY, NAHSLA BLACK-ZETINA, individually, and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| | **COMPLAINT** |
| SPROUT FOODS, INC., a Delaware corporation, and DOES 1 through 100, inclusive, | |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

*WILSHIRE LAW FIRM, PLC*
*3055 Wilshire Blvd., 12th Floor*
*Los Angeles, CA 90010-1137*

---

COMPLAINT AND DEMAND FOR JURY TRIAL

*"Baby food manufacturers hold a special position of public trust.  Consumers believe that they would not sell products that are unsafe."* [1]

- **Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives**

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[1] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

COMPLAINT AND DEMAND FOR JURY TRIAL

<div style="text-align: center; font-weight: bold;">

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

</div>

## TABLE OF CONTENTS

I.      SUBSTANTIVE ALLEGATIONS.................................................................1

II.     THE PARTIES.......................................................................................14

III.    JURISDICTION AND VENUE.................................................................15

IV.     FACTUAL ALLEGATIONS....................................................................16

V.      CLASS ACTION ALLEGATIONS...........................................................27

VI.     CAUSES OF ACTION............................................................................30

        A.    FIRST CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION.....30

        B.    SECOND CAUSE OF ACTION – FRAUDULENT MISREPRESENTATION
              ....................................................................................................31

        C.    THIRD CAUSE OF ACTION – VIOLATION OF THE CONSUMER LEGAL
              REMEDIES ACT……………………………………….............…………..33

        D.    FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA'S FALSE
              ADVERTISING LAW.......................................................................35

        E.    FIFTH CAUSE OF ACTION – VIOLATION OF THE CALIFORNIA UNFAIR
              COMPETITION LAW ......................................................................37

        F.    SIXTH CAUSE OF ACTION – FRAUD .........................................41

        G.    SEVENTH CAUSE OF ACTION – CONSTRUCTIVE FRAUD .................42

        H.    EIGHTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY
              ....................................................................................................44

        I.    NINTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY
              ....................................................................................................45

        J.    TENTH CAUSE OF ACTION – QUASI-CONTRACT / UNJUST
              ENRICHMENT ...............................................................................46

VII.    PRAYER FOR RELIEF............................................................................47

VIII.   DEMAND FOR A JURY TRIAL...............................................................47

<div style="text-align: center;">

0

COMPLAINT AND DEMAND FOR JURY TRIAL

</div>

Plaintiffs ANDREA KEY and NAHSLA BLACK-ZETINA ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

## I.    SUBSTANTIVE ALLEGATIONS

1. Defendant SPROUT FOODS, INC. ("Defendant" or "Sprout"), a Delaware corporation headquartered in Montvale, New Jersey, formulates, develops, manufactures, labels, distributes, markets, advertises, and sells baby foods under the name "Sprout Organic" throughout the State of California, as well as the United States more broadly.

2. Plaintiffs are reasonable consumers who purchased Defendant's baby foods reasonably believing that such baby foods are safe, nutritious, and free from harmful toxins, contaminants, and chemicals.

3. As a result of Defendant's negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of dangerous substances in its baby foods, Plaintiffs and the Class Members were induced to purchase Defendant's baby foods, which are not healthy for consumption by babies as advertised. Plaintiffs and the Class Members were induced to feed their babies dangerous foods containing toxic heavy metals, such a lead, arsenic, cadmium, and mercury, and the full extent of the harm caused to their babies is not yet known.

4. Consumers of baby foods, including Plaintiffs, place their trust in manufacturers like Defendant, believing they sell baby foods that are safe, nutritious, and free from harmful toxins, contaminants, and chemicals. Consumers expect that the food they feed to infants and toddlers is free of toxic heavy metals such as lead, arsenic, cadmium, and mercury – substances known to have significant and dangerous health consequences.

5. Reasonable consumers lack the scientific knowledge necessary to determine whether Defendant's products contain toxic heavy metals or to ascertain the true nature of the ingredients and quality of the products Defendant sells. Reasonable consumers therefore must – and do – rely on Defendant to honestly report what its various products contain.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

6. On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee"), released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury."[2]

7. On November 6, 2019, the Subcommittee made requests for internal documents and test results from some of the biggest baby food manufacturers in the nation, including Defendant.[3]

8. Of the seven companies contacted, four responded to the Subcommittee's requests.[4] Defendant was one of three manufacturers who refused to cooperate.[5] With regard to Defendant's refusal to cooperate with the Subcommittee's request, the Subcommittee noted that it was "greatly concerned that [Sprout Foods, Inc.'s] lack of cooperation might be obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products."[6] Indeed, the Subcommittee noted that "Sprout's evasion is concerning, as even limited independent testing has revealed the presence of toxic heavy metals in its baby food."[7]

9. After reviewing the internal documents and test results it received, the Subcommittee made the disturbing discovery that "commercial baby foods are tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[8]

10. Exposure to toxic heavy metals in large amounts has been shown to cause cognitive decline and thwart cognitive development, especially in children.[9] The report further

///

///

---

[2] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[3] *Id.*
[4] *Id.* at 2.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 43.
[8] *Id.* at 2.
[9] *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

2

COMPLAINT AND DEMAND FOR JURY TRIAL

claimed that exposure can lead to "diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children."[10]

11. Arsenic is a naturally occurring element found in food, water, air, and soil.[11]  In recent years, healthcare professionals have grown "increasingly concerned about the more subtle and long-range health effects of low-level exposures to humans, especially for infants and children exposed to arsenic in water and some foods, such as rice-based products, during sensitive windows of development."[12]  Arsenic, in general, can negatively impact one's skin, nervous system, respiratory system, cardiovascular system, liver, kidney, bladder and prostate, immune system, endocrine system, and developmental processes.[13]

12. Lead is also a naturally occurring element.[14]  Lead has been used as an ingredient in paint, gasoline, ceramics, plumbing pipes, and batteries.[15]  Lead is dangerous – so much so that the federal government has phased out its use in gasoline and house paint.[16]  Today, lead is primarily found in contaminated soil, old paint, dust, and contaminated drinking water.[17]  With respect to lead exposure to children, the National Institute of Environmental Health Sciences ("NIEHS") warns that exposure to lead can have a wide range of effects on a child's development and behavior, and that many effects are permanent.[18]  According to the NIEHS, blood lead levels at or less than 10 micrograms of lead per deciliter of blood ("µg/dL")  are associated with "increased behavioral effects, delayed puberty, and decreased hearing, cognitive performance, and postnatal growth or height."[19]  Health effects are found even at low blood lead levels of less than 5 µg/dL.[20]  "Such effects may include diminished IQ scores and academic achievement, and

---

[10] Id.
[11] Arsenic, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES,
https://www.niehs.nih.gov/health/topics/agents/arsenic/index.cfm.
[12] Id.
[13] Id.
[14] Lead, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES,
https://www.niehs.nih.gov/health/topics/agents/lead/index.cfm.
[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Id. citing Jianghong Liu et al., Blood Lead Levels and Children's Behavioral and Emotional Problems: A Cohort Study, JAMA PEDIATRICS, 168 (8) at 737-745 (Aug. 1, 2014),
https://jamanetwork.com/journals/jamapediatrics/fullarticle/1884486.
[20] Id.

3

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

increased behavioral problems and attention-related behaviors such as attention deficit hyperactivity disorder."[21]  According to the Centers for Disease Control ("CDC"), any child with more than 5 µg/dL of lead in their blood may be considered at risk of these negative health effects and public health actions should be initiated.[22]

13. According to a study published by the United Nations Children's Fund ("UNICEF") in 2020, lead poisoning is a serious problem affecting children globally.[23]  The study found that up to 800 million children have blood lead levels at or above 5 µg/dL.[24]

14. Mercury is a naturally occurring metal, and it is toxic for humans.[25]  Metallic mercury can frequently be found in fluorescent light bulbs, thermometers, and barometers.[26]  The NIEHS, Food and Drug Administration ("FDA") and Environmental Protection Agency ("EPA") have also been studying the psychological effects of methylmercury, a type of organic mercury, on humans through consumption of fish.[27]  It has been found that consuming large quantities of mercury through foods like fish increases a person's exposure to mercury, and pregnant women who regularly eat fish high in mercury risk permanently damaging their developing fetuses.[28]  Their children may exhibit motor difficulties, sensory problems, and cognitive deficits.[29]  In 2004, and again in 2019, the EPA and FDA released a consumer advisory notice, advising that children avoid fish with high traces of methylmercury.[30]

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

---

[21] *Id.*
[22] *Id. See also Blood Levels in Children*, CDC (Feb. 9, 2021), https://www.cdc.gov/nceh/lead/prevention/blood-lead-levels.htm.
[23] Nicholas Rees, Richard Fuller, *The Toxic Truth: Children's Exposure to Lead Pollution Undermines a Generation of Future Potential*, UNICEF and PURE EARTH (Jul. 2020), https://www.unicef.org/sites/default/files/2020-07/The-toxic-truth-children%E2%80%99s-exposure-to-lead-pollution-2020.pdf.
[24] *Id.*
[25] *Mercury*, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/mercury/index.cfm.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Advice about Eating Fish – For Women Who Are or Might Become Pregnant, Breastfeeding Mothers, and Young Children*, FDA and EPA (Dec. 29, 2020), https://www.fda.gov/food/metals-and-your-food/fdaepa-2004-advice-what-you-need-know-about-mercury-fish-and-shellfish; https://www.fda.gov/food/consumers/advice-about-eating-fish.

COMPLAINT AND DEMAND FOR JURY TRIAL

15. Cadmium is a metal typically obtained from zinc byproducts and "recovered from spent nickel-cadmium batteries."[31]  The Agency for Toxic Substances and Disease Registry has listed cadmium as the seventh most significant potential threat to human health.[32]  Research has associated cadmium exposure with diminished IQ and attention deficit hyperactivity disorder ("ADHD").[33]

16. An August 16, 2018 article published by Consumer Reports (ConsumerReports.Org ["CR"]) revealed that heavy metals such as lead, mercury, arsenic, and cadmium are contained in many foods made just for babies and toddlers, "such as popular snacks, cereals, prepared entrees, and packaged fruits and vegetables." [34] James E. Rogers, Ph.D., the director of food safety research and testing at Consumer Reports, stated that, "[b]abies and toddlers are particularly vulnerable due to their smaller size and developing brains and organ systems."[35] "They also absorb more of the heavy metals that get into their bodies than adults do."[36]

17. A significant number of children in the United States eat a lot of packaged baby foods.[37] A CR national survey found that more than ninety percent (90%) of parents with children three-years or younger turn to packaged baby foods at least occasionally.[38]  Zion Market Research found that annual sales of baby foods topped $54 billion in 2018 and were projected to reach more than $76 billion by 2021.[39]

18. Exposure to even small amounts of heavy metals, including cadmium, lead, mercury, and arsenic, at an early age may increase the risk of several health problems, especially

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

---

[31] *Cadmium*, OSHA, https://www.osha.gov/cadmium.
[32] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 12, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[33] *Id.*
[34] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*

5

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

lower IQ and behavioral problems, and have also been linked to autism and ADHD.[40]  Victor Villarreal, Ph.D., an assistant professor in the department of educational psychology at the University of Texas at San Antonio, who has researched the effects of heavy metals on childhood development, stated that, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[41]  Researchers at Duke University looked at 565 adults who had their lead levels measured as children.[42]  Those with high childhood lead readings had IQ levels that were 4.25 points lower, on average, than participants with lower childhood lead readings.[43]  A Columbia University study of third-through fifth-graders in Maine found that students who had been exposed to arsenic in drinking water had IQ levels that were 5 to 6 points lower, on average, than students who had not been exposed.[44]

19. The risk from heavy metals grows over time as they accumulate in the kidneys and other internal organs.  Tunde Akinleye, a chemist in CR's Food Safety Division who led the testing, stated that, "[t]hese toxins can remain in your body for years."[45]  Regular consumption of even small amounts of toxic heavy metals over a long period of time may raise the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes; among other conditions.[46]  A recent study from the journal Lancet Public Health suggests that low levels of lead from food and other sources contribute to about 400,000 deaths each year, more than half of them from cardiovascular disease.[47]  Getting too much methylmercury can cause nerve damage, muscle weakness, lack of coordination, and impaired vision and hearing.[48]  Over time, cadmium exposure can lead to kidney, bone, and lung disease.[49]

20. CR's food and safety team analyzed 50 nationally distributed packaged foods, including foods made by Defendant under the name "Sprout Organic," made for babies and

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

6

COMPLAINT AND DEMAND FOR JURY TRIAL

toddlers and checked them for cadmium, lead, mercury, and inorganic arsenic, the type most harmful to health.[50]   The results were troubling.  Every product tested by CR had measurable levels of at least one of the following heavy metals: cadmium, inorganic arsenic, or lead. [51] Moreover, about two-third (68%) had "worrisome" and "concerning" levels of at least one heavy metal.[52]   Fifteen of the foods tested would pose potential health risks to children who regularly eat just one serving or less per day.[53]  Two rice cereals contained measurable levels of methylmercury[54].  Research suggests that rice cereals may be an overlooked source of mercury in infants' diets: in a test of 119 infant cereals, researchers at Florida International University found that rice cereals had on average three times as much methylmercury as multigrain cereals and 19 times as much as other non-rice cereals.[55]

21. Products with rice, including Defendant's Sprout Organic Baby Food Garden Vegetables Brown Rice With Turkey and Sprout Organic Quinoa Puffs Baby Cereal Snack Apple Kale, fared worst in the CR study because they contained worrisome amounts of inorganic arsenic, lead, and cadmium.[56]   As a category, snack foods – bars, cookies, crackers, crunches, crisps, rice rusks, teething biscuits, and puffs – were most problematic, generally because of their rice content.[57]  This finding is especially concerning because snacks are the most common type of packaged product that babies and toddlers eat, according to CR's survey.[58]  About seventy-two percent (72%) of parents said they feed their child at least one of the types of snack foods CR tested.[59]

22. Jay Schneider, Ph.D., a professor of anatomy, pathology, and cell biology and Thomas Jefferson University in Philadelphia, has examined hundreds of children who have suffered the effects of lead exposure.[60]   Given lead's extreme toxicity, and the inability to reverse

---

[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

7

COMPLAINT AND DEMAND FOR JURY TRIAL

or remediate its effects, he calls it "outrageous" that there would even be the tiniest amount of lead in children's food.[61]  "It's extremely potent," says Schneider.  "We know that there is no level of lead in the blood of a child that is safe."[62]

23. Moreover, organic foods are not safer.  Twenty of the products tested by CR were found to be *just as likely* to contain heavy metals as conventional foods.[63]  In CR's survey, thirty-nine percent (39%) of parents who purchased packaged foods sometimes bought organic food for their children, citing a desire to avoid lead, arsenic, and other heavy metals as their *primary* reason for doing it.[64]

24. Defendant knew or should have known that its baby foods contain significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury.  Defendant knew or should have known that such toxic metals are not fit for consumption.  Defendant knew or should have known that its baby foods are detrimental to the health of babies.  Defendant had no reasonable ground for believing that their baby foods were free from toxic heavy metals, or that such toxic metals were appropriate for sale in baby foods.

25. Defendant intended to induce reasonable consumers to rely on its marketing, all of which explicitly and implicitly convey that Defendant's organic baby foods are healthy for consumption by babies, and superior to other manufacturers' baby foods.  Such marketing includes words written on the containers of Defendant's baby foods, including, but not limited to, the actual name of the product, "Sprout Organic," as well as phrases such as the following:[65]

      o    "Our #1 goal at Sprout Foods is to provide you and your family with the highest quality products[]";

      o    "Sprout believes that a meal is more than nourishment. It's a chance to inspire and grow together.  That's why we are committed to introducing an early love of healthy, whole organic foods to children everywhere[]";

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] http://www.sproutorganicfoods.com/ (retrieved April 1, 2021)

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

o     "Research shows that starting babies on healthy foods early in development helps foster healthy eating habits through life.  Teaching a baby to accept savory and complex flavors, like leafy greens, can be challenging when young palates naturally gravitate towards sweet fruits.  That's why we've grafted a variety of fruit, vegetable, and grain blends that help babies adapt to new flavors and textures and provide greater exposure to wholesome foods[]";

o     "Sprout Organic Apple Kale Plant Power Puffs are the perfect first snack for babies.  Made with only 5 simple ingredients, including easy to digest ancient grain Sorghum and just the right blend of real fruits and veggies to keep little ones coming back for more.  Plant Power Puffs are easy to pick up and hold and soft enough to dissolve quickly in their little mouths[]";

o     "Delicious snack that uses no artificial flavors or colors";

o     "Created to satisfy baby's growing appetite";

o     "Free of Gluten";

o     "Nothing Artificial";

o     "Certified Organic, Non-GMO ingredients";

o     "100% BPA-Free Packaging";

o     "Whole Foods, No Concentrates";

o     "USDA Organic";

o     "Always Transparent, Non-GMO"; and

o     "Prepared ONLY with ingredients found in your kitchen!"

26. The imagery used on Defendant's products also implicitly conveys that Defendant's baby foods are healthy for consumption by babies by depicting images of its foods' nourishing and wholesome ingredients, such as fruits, vegetables, and grains.  Below are just a few examples:

///

///

///

9

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137










27          27. Plaintiffs justifiably relied on Defendant's marketing. Plaintiffs suffered damages

28    when they unknowingly purchased baby foods that contain toxic heavy metals and other

COMPLAINT AND DEMAND FOR JURY TRIAL

undesirable toxins and contaminants.  Plaintiffs' babies were harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

28. Defendant's false and misleading advertising deceives consumers into believing that they are purchasing and feeding their babies safe and nutritious baby foods and, through this deception, Defendant seeks to induce consumers to purchase Defendant's baby foods when they would otherwise have purchased other baby foods that do not contain toxic heavy metals or other undesirable toxins and contaminants.

29. Defendant was aware that it was not providing their customers with healthy baby foods, yet it proceeded to advertise its baby foods as safe for consumption by babies.  To this day, Defendant continues to advertise its baby foods as safe for consumption by babies.  Defendant creates the clear impression to its customers that they are purchasing and feeding their babies food that does not contain any toxic heavy metals or other undesirable toxins and contaminants.  This behavior is therefore materially misleading, in that reasonable consumers would not understand that Sprout Organic baby foods contain any toxic heavy metals or other undesirable toxins and contaminants.  Thousands of consumers have purchased Defendant's baby foods under the false belief that the baby foods are safe and nutritious for their babies and do not contain any toxic heavy metals or other undesirable toxins and contaminants.  They have been misled.  They have been deceived into purchasing dangerous baby food.  They have inadvertently fed their babies dangerous baby food containing toxic heavy metals and other undesirable toxins and contaminants.  Their babies were harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

30. Defendant knew that its customers trust the quality of its products and that customers expect Defendant's products to be free of toxic heavy metals and other undesirable toxins and contaminants.  Defendant also knew that certain consumers seek out and wish to purchase premium organic baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals and that these consumers will pay more for baby foods that they believe possess these qualities.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

11

COMPLAINT AND DEMAND FOR JURY TRIAL

31. Defendant's knowledge that its customers trust the quality of its products, their expectations that Defendant's products will be free of toxic heavy metals and other undesirable toxins and contaminants, and their willingness to pay more for premium organic baby foods that are free from toxins, contaminants, or chemicals is evident in Defendant's business practices.

32. Defendant's promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising center on representations and pictures that are intended to, and do, convey to consumers that Defendant's baby foods possess certain qualities and characteristics that justify a premium price. Even the name of Defendant's baby food conveys that Sprout's baby food is superior to other baby foods that are not made using organic ingredients.

33. Defendant's website contains the following webpages, making countless claims that Defendant's baby foods are not only healthy and safe for babies, but also implying that Defendant's organic baby foods are comparative if not superior to other baby foods:[66]




WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[66] *Company History*, SPROUT, http://www.sproutorganicfoods.com/about-us/company-history; *Values & Guarantee*, SPROUT, http://www.sproutorganicfoods.com/about-us/values-guarantee; *Sourcing*, SPROUT, http://www.sproutorganicfoods.com/about-us/sourcing.

COMPLAINT AND DEMAND FOR JURY TRIAL

34. Reasonable consumers seeing Defendant's marketed products would not expect the baby foods to contain toxic heavy metals or other undesirable toxins or contaminants.

35. Furthermore, reasonable consumers, including Plaintiffs, would consider the mere inclusion of heavy metals or other undesirable toxins or contaminants a material misrepresentation when considering which baby food to purchase.

36. Defendant intended for consumers to rely on its marketing, and reasonable consumers, including Plaintiffs, did in fact so rely. Defendant's marketing and advertising is deceptive, misleading, unfair, false, and/or fraudulent because, among other things, the baby foods include undisclosed toxic heavy metals or other undesirable toxins or contaminants.

37. Defendant's baby foods do not have a disclaimer regarding the presence of toxic heavy metals or other undesirable toxins or contaminants that would inform consumers that the foods contain toxic heavy metals and/or that toxic heavy metals can accumulate overtime in a child's body to the point where poisoning, injury, and/or disease can occur.

38. Instead, Defendant's baby foods create the impression, by the content and images on their labels, as well as by other marketing material created and distributed by Defendant, that they are healthy for consumption, and preferable over other brands of baby foods.

39. Defendant's wrongful marketing and advertising, which includes misleading, deceptive, unfair, and false claims and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a price premium for baby foods that were not sold as advertised. Defendant continues to wrongfully induce consumers to purchase its baby foods that are not as advertised.

40. Defendant created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for its baby foods. The marketing for the baby foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing for the baby foods was designed to encourage consumers to purchase the baby foods and reasonably misled the reasonable consumer into purchasing the baby foods.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

13

COMPLAINT AND DEMAND FOR JURY TRIAL

41. Defendant continues to wrongfully induce consumers to purchase its baby foods that are not as advertised.  Plaintiffs would like to purchase healthy, wholesome food for their children in the future from manufacturers including Defendant, but cannot do so with any degree of certainty that these foods will not contain toxic heavy metals or other undesirable toxins or contaminants.

42. Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Class, who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's tainted baby foods.

43. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for baby foods that did not deliver what they promised.  They paid the purchase price on the assumption that the labeling of the baby foods was accurate and that it was free of toxic heavy metals and safe to ingest.  Plaintiffs would not have paid this money or fed their baby food containing toxic heavy metals had they known the truth that Defendant's baby foods contain excessive degrees of toxic heavy metals.  Damages can be calculated through expert testimony at trial.

## II.    THE PARTIES

44. Plaintiffs are, and at all times relevant hereto have been, citizens of the state of California.

45. Plaintiff Andrea Key ("Plaintiff Key") is a California resident residing in Campbell, California.  Plaintiff Key purchased Sprout Organic baby foods repeatedly, including from Amazon.com, from 2019 through 2020, with her last purchase in September 2020.  Plaintiff Key believed she was feeding her baby healthy, nutritious food.  Due to Defendant's false and misleading claims and omissions, Plaintiff Key was unaware that the baby food she fed her baby contained any level of toxic heavy metals.  Plaintiff Key would not have purchased Defendant's baby food if she knew that Sprout Organic baby food contains toxic heavy metals and other undesired toxins and contaminants.  Plaintiff Key inadvertently fed her baby foods that contain toxic heavy metals and other undesired toxins and contaminants.  Plaintiff Key's baby was

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

14

COMPLAINT AND DEMAND FOR JURY TRIAL

harmed or was placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

46. Plaintiff Nahsla Black-Zetina ("Plaintiff Black-Zetina") is a California resident residing in Antioch, California. Plaintiff Black-Zetina purchased Sprout Organic baby foods repeatedly, including from Amazon.com, from 2019 through 2021, with her last purchase in March 2021. Plaintiff Black-Zetina believed she was feeding her baby healthy, nutritious food. Due to Defendant's false and misleading claims and omissions, Plaintiff Black-Zetina was unaware that the baby food she fed her baby contained any level of toxic heavy metals. Plaintiff Black-Zetina would not have purchased Defendant's baby food if she knew that Sprout Organic baby food contains toxic heavy metals and other undesired toxins and contaminants. Plaintiff Black-Zetina inadvertently fed her baby foods that contain toxic heavy metals and other undesired toxins and contaminants. Plaintiff Black-Zetina's baby was harmed or was placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

47. Defendant is incorporated in Delaware. Its headquarters are located at 50 Chestnut Ridge Road, Suite 205, Montvale, New Jersey 07645.

48. Plaintiffs are unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 100. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 100 if and when ascertained. Plaintiffs are informed and believe, and thereupon allege, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events alleged herein and that each of the Defendants sued herein as a DOE proximately caused injuries and damages to Plaintiffs, Class Members, and their babies as set forth below.

### III.    JURISDICTION AND VENUE

49. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between Plaintiffs and Defendant.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

50. The Court has personal jurisdiction over Defendant because Plaintiffs' and the Class Members' claims arise out Defendant's business activities conducted in the State of California.

51. Venue is appropriate in the Northern District of California under 28 U.S.C. § 1391(b)(2) because Plaintiffs reside within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to Class Members residing in this district.

## IV.    FACTUAL ALLEGATIONS

52. Baby food manufacturers are free to set their own internal standards for toxic heavy metal content of their products. They have set those standards at dangerously high levels and have often sold foods that exceed even those levels.

53. On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee"), published a report detailing its findings that toxic heavy metals—including arsenic, cadmium, lead, and mercury—were present in significant levels in numerous commercial baby food products.

54. Defendant was one of seven baby food manufacturers from whom the Subcommittee requested internal documents and test results, but Defendant "refused to cooperate with the Subcommittee's investigation."[67]

**Findings from the Subcommittee's Report:**

55. As of now, there is no established safe level of inorganic arsenic consumption for babies.[68] However, organizations like Healthy Babies Bright Futures advocate for no measurable amount of inorganic arsenic in baby food.[69] Consumer Reports suggests setting inorganic arsenic

---

[67] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 2, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[68] *Id.* at 51.
[69] *Id.* at 13. *See also What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019 10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

levels as low as 3 parts per billion ("ppb").[70]  The FDA has already set maximum inorganic arsenic levels at 10 ppb for bottled water.[71]  The EPA has similarly set a 10 ppb inorganic arsenic cap on drinking water,[72] as have the European Union ("EU")[73] and the World Health Organization ("WHO")[74].

56. There is no federal standard for lead in baby food, but the FDA has set a 5 ppb lead standard for bottled water,[75] the WHO has set 10 ppb lead as a provisional guideline for drinking water,[76] and the EPA has set an action level of 15 ppb for lead in drinking water.[77]  The FDA has also set standards for lead in juice (50 ppb) and candy (100 ppb).[78]  The European Union has set the maximum lead level in infant formula to 20 ppb.[79]

57. Outside the context of baby food, some regulations have taken action against cadmium.[80]  The EPA has a limit of 5 ppb in drinking water,[81] the FDA has set a limit of 5 ppb in bottled water,[82] and the WHO set a 3 ppb limit for cadmium in drinking water.[83]  Groups like Healthy Babies Bright Futures have set a goal of no measurable amount of cadmium in baby

///

---

[70] *Id.* at 13. *See also Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says*, CONSUMER REPORTS, (June 28, 2019), www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/); *Arsenic and Lead Are in Your Fruit Juice: What You Need to Know*, CONSUMER REPORTS (Jan. 30, 2019), www.consumerreports.org/food-safety/arsenic-and-lead-are-in-your-fruit-juice-what-you-need-to-know/.
[71] *Arsenic in Food and Dietary Supplements*, FDA, www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements.
[72] *Drinking Water Requirements for States and Public Water* Systems, EPA, www.epa.gov/dwreginfo/chemical-contaminant-rules.
[73] *Arsenic (Q&A)*, EUROPEAN FOOD INFORMATION COUNCIL, www.eufic.org/en/food-safety/article/arsenic-qa.
[74] *Arsenic*, WHO (Feb. 15, 2018), www.who.int/news-room/fact-sheets/detail/arsenic.
[75] Lead in Food, Foodwares, and Dietary Supplements, FDA (Feb. 27, 2020), https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements#:~:text=The%20FDA%2C%20through%20its%20regulatory,is%20set%20at%205%20ppb.
[76] *Lead in Drinking-Water* at 14, WHO (2011), www.who.int/water_sanitation_health/dwq/chemicals/lead.pdf.
[77] *Drinking Water Requirements for States and Public Water Systems*, EPA, www.epa.gov/dwreginfo/lead-and-copper-rule.
[78] https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements
[79] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 21, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[80] *Id.* at 29.
[81] *Ground Water and Drinking Water*, EPA, www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.
[82] 21 C.F.R. § 165 (2019), www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=165.110.
[83] *Cadmium in Drinking-Water* at 6, WHO (2011) (online at www.who.int/water_sanitation_health/water-quality/guidelines/chemicals/cadmium.pdf?ua=1)

17

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

food.[84]  Consumer Reports has called for a limit of 1 ppb cadmium in fruit juices.[85]  The EU has set a limit ranging from 5–20 ppb cadmium for infant formula.[86]

58. Outside the context of baby food, some regulatory bodies have taken action against industries using excessive mercury in commonly used products.[87]  For example, the EPA set a maximum for mercury content in drinking water at 2 ppb,[88] and consumer advocates urge even stricter standards for baby food.  Indeed, Healthy Babies Bright Futures has called for a goal of no measurable amount of mercury in baby food.[89]

59. As previously mentioned, a study of 50 nationally distributed packaged baby foods by Consumer Reports, including foods made by Defendant, found that every product tested had measurable levels of at least one of the following heavy metals: cadmium, inorganic arsenic, or lead.[90]  The report found that products with rice, including Defendant's baby foods, fared worst in the CR study because they contained worrisome amounts of inorganic arsenic, lead, and cadmium.[91]

60. Additionally, although Defendant refused to cooperate with the Subcommittee's investigation, limited independent testing conducted by Healthy Babies Bright Futures indicates that Defendant's baby foods do, indeed, contain toxic heavy metals.[92]  The table below, divided

---

[84] Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* at 9 (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

[85] *Consumer Reports Letter to FDA On Reducing Heavy Elements Like Arsenic, Lead, and Cadmium in Fruit Juices*, CONSUMER REPORTS (Jan. 30, 2019), https://advocacy.consumerreports.org/research/consumer-reports-letter-to-fda-on-reducing-heavy-elements-like-arsenic-lead-and-cadmium-in-fruit-juices/.

[86] *Setting Maximum Levels for Certain Contaminants in Foodstuffs* at 28-9, EUROPEAN UNION (Dec. 19, 2006), https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:02006R1881-20150521.

[87] *Id.* at 32.

[88] *Ground Water and Drinking Water*, EPA, www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.

[89] *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

[90] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.

[91] *Id.*

[92] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 46-47, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

18

COMPLAINT AND DEMAND FOR JURY TRIAL

into two halves and enlarged for ease of reference, breaks down the toxic heavy metal contents of two Sprout Organic products examined through independent testing:[93]

*Data from Healthy Babies Bright Futures Report: What's in My Baby's Food?*[125]

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Metro area where purchased | Retailer |
|---|---|---|---|---|---|---|---|---|---|
| Sprout | Organic Quinoa Puffs Baby Cereal Snack - Apple Kale | Snack - puffs, contains rice | 107 | 47 | 39.3 | 41.5 | 1.31 | Washington, DC | amazon.com |

## Data from Healthy Babies Bright Futures Report: What

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) |
|---|---|---|---|---|
| Sprout | Organic Quinoa Puffs Baby Cereal Snack - Apple Kale | Snack - puffs, contains rice | 107 | 47 |

## eport: What's in My Baby's Food?

| Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Metro area where purchased | Retailer |
|---|---|---|---|---|---|---|
| 107 | 47 | 39.3 | 41.5 | 1.31 | Washington, DC | amazon.com |

61. As shown in the table, Sprout Organic's Organic Quinoa Puffs Baby Cereal Snack in apple kale flavor contains 47 ppb inorganic arsenic, 39.3 ppb lead, 41 ppb cadmium, and 1.31 ppb mercury.

62. This limited independent testing shows that Sprout Organic's baby foods contain toxic heavy metals in dangerously high amounts. As discussed, these four toxic heavy metals, when present and consumed in high amounts, have been shown to wreak havoc on developing children's cognitive development and physical health. Although Healthy Babies Bright Futures has advocated for absolutely no measurable amount of inorganic arsenic in baby food, Defendant's Organic Quinoa Puffs Baby Cereal Snack in apple kale flavor contains 47 ppb

[93] *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

19

COMPLAINT AND DEMAND FOR JURY TRIAL

inorganic arsenic.  Given that this limited testing has revealed that Defendant's baby foods contain four toxic heavy metals in dangerously high amounts, and given Defendant's refusal to cooperate with the Subcommittee's investigation, there is a great likelihood that additional comprehensive testing will show that other Sprout Organic baby foods also contain high traces of toxic heavy metals.

63. This concern is not merely speculative.  For example, Sprout Organic's Apple Oatmeal Raisin with Cinnamon puree for babies ages six months old and up contains oats, raisins, and cinnamon.[94]  One of the major baby food manufacturers that did cooperate with the Subcommittee, Hain Celestial Group, Inc. ("Hain"), admitted that one of its used ingredients that tested dangerously high in cadmium was oat flour, which is made from ground oats.[95] Hain further admitted that the raisins it used tested high for the presence of arsenic, and its cinnamon tested high for arsenic and cadmium.[96]  These findings raise concern that Sprout Organic's Apple Oatmeal Raisin with Cinnamon puree, and other Sprout foods, containing flour, raisins, or cinnamon, may also contain high amounts of inorganic arsenic, and perhaps other toxic heavy metals, too.

64. Hain also admitted that its whole wheat flour tested high for lead.[97]  The Subcommittee has also reported that organic brown rice was the ingredient that tested highest in inorganic arsenic—309 ppb.  Indeed, the majority of one cooperating entity's ingredients that exceeded 100 ppb inorganic arsenic in testing were organic brown rice flour.[98]  This finding raises concern that any Sprout Organic baby foods containing whole wheat flour, brown rice, and brown rice flour may contain high amounts of inorganic arsenic and/or other toxic heavy metals.

65. Overall, Defendant's refusal to comply with governmental investigations and requests raise serious concerns as to whether its diverse array of baby foods contain unhealthy amounts of toxic heavy metals and put babies in danger.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

---

[94] *Apple Oatmeal Raisin with Cinnamon*, SPROUT, http://www.sproutorganicfoods.com/babies/6-months-and-up/organic-baby-food-fruit-grain-blend/apple-oatmeal-raisin-cinnamon.
[95] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 30-31.
[96] *Id.* at 16, 41.
[97] *Id.* at 27.
[98] *Id.* at 57.

20

COMPLAINT AND DEMAND FOR JURY TRIAL

66. Defendant's packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its baby foods throughout the United States, including California.

67. Defendant's baby foods are sold under the brand "Sprout Organic," implying that Defendant's organic ingredients will ensure that Sprout baby foods are the healthiest choice for growing children.

68. Defendant's advertised mission is to teach children at a young age to love healthy, organic foods.

69. Defendant claims that "Sprout believes that a meal is more than nourishment. It's a chance to inspire and grow together. That's why we are committed to introducing an early love of healthy, whole organic foods to children everywhere."[99] It further claims that it "rigorously source[s] the ingredients used in our recipes to ensure that the cleanest and safest food is delivered to your family. Learn more about the organic farms and farmers we've partnered with and how Sprout is committed to procuring ingredients that are certified organic, non-GMO, and preservative-free."[100] The images below depict traditional advertising on Sprout Organic baby food products:



WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[99] *Values & Guarantee*, SPROUT, http://www.sproutorganicfoods.com/about-us/values-guarantee.
[100] *About Us*, SPROUT ORGANIC FOODS, http://www.sproutorganicfoods.com/about-us/sourcing.

COMPLAINT AND DEMAND FOR JURY TRIAL



70. Based on Defendant's decision to advertise, label, and market its baby foods as healthy, nutritious, and safe for consumption, it had a duty to ensure that these statements and the message portrayed by its labels' imagery were true and not misleading. As such, Defendant knew or should have known the baby foods included nondisclosed, dangerous levels of heavy metals, and that these toxins can accumulate over time.

71. The baby foods are available at Defendant stores around the country, as well as other retail stores, and are widely advertised. The marketing of the baby foods fails to disclose they contain or are at risk of containing any level of toxic heavy metals or other undesirable toxins or contaminants. Defendant intentionally omitted these warnings to induce and mislead reasonable consumers to purchase its baby foods.

72. As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of toxic heavy metals in the baby foods without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

**Defendant's Marketing Unequivocally Misleads and Deceives Consumers.**

73. Defendant's marketing wrongfully conveys to consumers that its baby foods have certain superior quality and characteristics that they do not actually possess. While Defendant

22

COMPLAINT AND DEMAND FOR JURY TRIAL

misleadingly causes consumers to believe its baby foods do not contain toxic heavy metals through its advertising statements and omissions, its baby foods do in fact contain undisclosed toxic heavy metals.  This is, without a doubt, material information to reasonable consumers in that it would impact a consumer's decision to purchase the baby food in question.

74. Independent testing shows that at least some of Defendant's baby food products were found to contain dangerous levels of heavy toxic metals.

75. Defendant's marketing wrongfully fails to disclose to consumers the presence of toxic heavy metals in its baby foods.

76. Based on Defendant's deceiving marketing tactics, a reasonable consumer would not suspect the presence of toxic heavy metals, nor would a reasonable consumer be able to detect the presence of toxic heavy metals in Defendant's baby foods without conducting his or her own scientific tests or reviewing scientific testing conducted on said baby foods.

77. Reasonable consumers must and do rely on Defendant to honestly report what its baby foods contain.

78. Defendant knew or should have known its baby foods contained toxic heavy metals.

79. Defendant intended for consumers to rely on its marketing, and reasonable consumers did in fact so rely.

80. Pursuant to the foregoing, Defendant's marketing tactics are deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

**Defendant Breached the Duties it Owes to Consumers.**

81. Defendant had a duty to ensure the baby foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

82. Defendant breached this duty.

83. At all times during the Class Period, Defendant knew or should have known its baby foods contained toxic heavy metals and/or were not sufficiently tested for the presence of toxic heavy metals.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

84. Defendant knew or should have known that it owed consumers a duty of care to adequately test for toxic heavy metals in its baby foods.

85. Defendant breached this duty.

86. Defendant's baby foods had a risk of containing toxic heavy metals due to Defendant's failure to monitor for its presence in the ingredients and finished products.

87. Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of toxic heavy metals in its baby foods to the extent reasonably possible.

88. Defendant breached this duty.

89. Defendant knew or should have known that consumers purchased its baby foods based on the reasonable expectation that Defendant manufactured the baby foods to the highest standards.  Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the baby foods to the highest standards for preventing the inclusion of toxic heavy metals in its baby foods.

90. Defendant knew that toxic heavy metals are dangerous contaminants that pose health risks to humans, especially children.

91. Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class.

92. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing tactics and omissions.

93. Reasonable consumers, like Plaintiff, would consider the inclusion of toxic heavy metals a material fact when considering which baby food to purchase.

94. Defendant knew that properly and sufficiently monitoring for toxic heavy metals in its ingredients was not only important, but critical.

95. Defendant also knew that monitoring toxic heavy metals was likewise important to its health-conscious consumers.

96. Finally, Defendant knew or should have known it could control the levels of toxic heavy metals in its baby foods by properly monitoring its ingredients for toxic heavy metals and ///

24

COMPLAINT AND DEMAND FOR JURY TRIAL

adjusting any formulation or diet to reduce ingredients that contained higher levels of toxic heavy metals.

97. Defendant also knew it was not properly and sufficiently testing for toxic heavy metals in its baby foods.  Defendant knew its failure to properly and sufficiently test its baby foods for toxic heavy metals continued throughout the Class Period and constituted a breach of the duties Defendant owes to consumers.

98. Defendant's marketing tactics were misleading due to Defendant's failure to properly and sufficiently monitor for, and to disclose the risk of, the presence of toxic heavy metals in Defendant's baby foods.

99. Defendant knew or should have known consumers paid premium prices and expected Defendant to regularly test for toxic heavy metals and sufficiently monitor the presence of toxic heavy metals in finished baby food products and ingredients.

100.      At all times during the Class Period, Defendant did not consistently monitor or test for toxic heavy metals in its baby foods and ingredients, in breach of the duties Defendant owes to consumers.

101.      Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of toxic heavy metals in its baby foods and ingredients.

102.      Defendant knew or should have known its baby foods contained unmonitored levels of toxic heavy metals that were inconsistent with its marketing practices and representations to consumers.

103.      Defendant knew or should have known that consumers expected it to ensure its baby foods were monitored and tested for toxic heavy metals to ensure compliance with its marketing practices and representations to consumers.

104.      Defendant knew but failed to disclose its lack of regular testing and knowledge of the risk or presence of toxic heavy metals in its baby foods and ingredients, in breach of the duties Defendant owes to consumers.

///

25

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

**Defendant Misled Consumers, in Breach of its Duties, for its Own Financial Benefit.**

105.    Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that Defendant's baby foods are healthy, nutritious, and made from the best ingredients, are subject to stringent quality control, and are free of toxic heavy metals.

106.    Reasonable consumers, such as Plaintiff and the Class Members, would have no reason to doubt Defendant's statements regarding the quality of its baby foods.

107.    As a result of Defendant's wrongful misrepresentations, which include misleading, deceptive, unfair, and false statements and omissions, Defendant has generated substantial sales of its baby foods.

108.    Defendant's wrongful misrepresentations, which include misleading, deceptive, unfair, and false representations and omissions, allowed it to capitalize on and reap enormous profits from consumers who paid the purchase price or premium for products that were not as advertised.  This is not surprising given that annual sales of baby foods topped $54 billion in 2018 and were projected to reach more than $76 billion by 2021.[101]

109.    Moreover, the organic baby food industry was valued at $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[102]  The incredible rise in consumer demand for organic baby food, such as the organic baby foods sold by Defendant, is "driven by the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products." [103]

///

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[101] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.

[102] *Laura Wood, North America Organic Baby Food Market Expected to Reach a Value of $3.32 Billion by 2024 with a CAGR of 9.6%*, BUSINESS WIRE (Jan. 20, 2020, 12:10 PM), https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com#:~:text=The%20publisher%20expects%20the%20market,using%20any%20chemicals%20or%20preservatives.

[103] *Organic Baby Food Market – Growth, Trends, COVID-19 Impact, and Forecasts (2021-2016)*, MORDOR INTELLIGENCE (2020), https://www.mordorintelligence.com/industry-reports/organic-baby-food-market.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

### V.    CLASS ACTION ALLEGATIONS

110.    Plaintiffs bring this action individually and on behalf of the following Class:

> All consumers residing in California who purchased Sprout Organic baby foods from four years prior to the filing of this Complaint through entry of final judgment. (the "Class").

111.    Excluded from the Class are (a) Defendants, including any entity in which any of the Defendants have a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendant; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiff reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

112.    *Numerosity*. The members of the Class are so numerous that joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiffs at this time, given the number of consumers of Defendant's baby food products in California, it stands to reason that the number of Class Members is at least in the thousands.  Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as sales records.

113.    *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

a.  Whether Defendant owns, manufactures, distributes, and creates the marketing and advertising for Sprout Organic baby foods;

b.  The level of toxic heavy metals and other undesirable toxins and contaminants contained in Defendant's baby foods;

c.  Whether Defendant represented and continues to represent that its baby foods are healthy, nutritious, and safe for consumption;

d.  Whether Defendant represented and continues to represent that the manufacturing of its products is subjected to rigorous quality standards;

27

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

e.    Whether Defendant owed a duty of care to its customers to ensure that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

f.    Whether Defendant owed a duty to investigate that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

g.    Whether Defendant had a policy of ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

h.    Whether Defendant had a practice of ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

i.    Whether Defendant had a procedure for ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

j.    Whether Defendant knew or should have known that its baby foods contained toxic heavy metals and other undesirable toxins and contaminants;

k.    Whether Defendant owed a duty of care to ensure that its advertising, warranties, packaging, and labeling do not contain any false representations that Defendant's baby foods are healthy, nutritious, and safe for consumption;

l.    Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

m.    Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are likely to deceive a reasonable consumer;

n.    Whether Defendant had knowledge that its representations regarding the in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

o.    Whether Defendant continues to disseminate representations that its baby foods are healthy, nutritious, and safe for consumption despite knowledge that the representations are false, deceptive, and misleading;

p.    Whether a representation that baby food is healthy, nutritious and safe for consumption and does not contain toxic heavy metals is material to a reasonable consumer;

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

q.  Whether Defendant's marketing tactics and representations of its baby foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

r.  The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled; and

s.  Whether Plaintiff and Class Members are entitled to damages, civil penalties and/or injunctive relief.

114.    *Typicality*.  Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like the other Class Members, purchased Defendant's baby foods based on the reasonable belief that they were healthy, nutritious, and safe for consumption by babies. Plaintiffs, as with other Class Members, were deceived by Defendant's misrepresentations and omissions of fact.

115.    *Adequacy of Representation*.  Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer class actions.  Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

116.    *Superiority of Class Action*.  A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action.   The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

///

///

29

COMPLAINT AND DEMAND FOR JURY TRIAL

1    117.    Class certification is also appropriate because Defendant has acted or

2    refused to act on grounds generally applicable to the Class Members, such that final injunctive

3    relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## VI.    CAUSES OF ACTION

### A.  **FIRST CAUSE OF ACTION**

NEGLIGENT MISREPRESENTATION

7    118.    Plaintiffs, individually and on behalf of the Class, repeat and allege

8    Paragraphs 1-117, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf

9    of any potential Subclasses.

10    119.    Plaintiffs reasonably placed their trust and reliance in Defendant's

11    representations that its baby foods were as advertised to Plaintiffs and the Class, and were healthy,

12    nutritious, safe for consumption, and did not contain toxic heavy metals.

13    120.    Because of the relationship between the parties, Defendant owed a duty to

14    use reasonable care to impart correct and reliable disclosures concerning the presence of toxic

15    heavy metals in its baby foods or, based upon its superior knowledge, to say enough to not be

16    misleading.

17    121.    Defendant breached its duty to Plaintiffs and the Class by providing false,

18    misleading, and/or deceptive information regarding the nature of its baby foods.

19    122.    Plaintiffs and the Class reasonably and justifiably relied upon the

20    information supplied to them by Defendant.  A reasonable consumer would have relied on

21    Defendant's warranties, statements, representations, advertising, packaging, labeling, and other

22    marketing as to the quality, make-up, and included ingredients of the baby foods.

23    123.    As a result of these misrepresentations, Plaintiffs and the Class purchased

24    the baby foods containing toxic heavy metals at a premium.

25    124.    Defendant failed to use reasonable care in its communications and

26    representations to Plaintiffs and the Class, especially in light of its knowledge of the risks and

27    importance of considering ingredients to consumers when purchasing baby food.

28    ///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

30

COMPLAINT AND DEMAND FOR JURY TRIAL

125.    By virtue of Defendant's negligent misrepresentations, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## B. SECOND CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

126.    Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-125, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

127.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling various types of baby food.

128.    Defendant, acting through its representatives or agents, delivered baby foods to its retail stores, distributors, and various other distribution channels.

129.    Defendant willfully, falsely, and knowingly misrepresented various material facts regarding the quality and contents of its baby foods.

130.    Rather than inform consumers of the truth regarding the existence of toxic heavy metals in its baby foods, Defendant engaged in misrepresentation.  Defendant misrepresented its baby foods as healthy and safe for consumption for developing babies. Defendant assured consumers that by buying its products, consumers were investing in the best quality products for their growing children.

131.    Defendant made these material misrepresentations to boost or maintain sales of its baby foods, and to falsely assure purchasers that by buying its products, consumers were purchasing foods superior to those made by competitors.  Defendant made false representations with knowledge of their falsity, as it was in the unique position to know exactly how its products were made and to what degree did those products contain toxic heavy metals. The false representations were material to consumers because the representations played a significant role in consumers' decision to invest in certain baby foods.

132.    Plaintiffs and the Class Members reasonably relied on Defendant's claims pertaining to its baby foods' healthfulness, quality, and safety, as all consumers who purchase

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

31

**COMPLAINT AND DEMAND FOR JURY TRIAL**

baby foods reasonably rely on the manufacturer's representations with regards to the manufacturer's products.

133.    Plaintiffs and Class Members had no way of knowing that Defendant was misrepresenting its baby foods' actual contents.

134.    Plaintiffs and Class Members could not have discovered the misleading nature of Defendant's misrepresentations on their own, because Defendant was in exclusive possession of such information, and/or continued to advertise its products as safe, healthy, and nutritious for consumption by babies.

135.    Plaintiffs and the Class Members had no reason to suspect Defendant of misrepresenting material information in its advertisements.

136.    Plaintiffs and the Class Members did not have an independent duty to investigate Defendant's representations.

137.    Although Defendant, as the manufacturer and distributor of its baby foods, had a duty to ensure the accuracy of the representations it disseminated regarding its products' contents, Defendant did not fulfill these duties.

138.    Defendant was in a superior position to know the falsity and/or misleading nature of its representations.  As the manufacturer, Defendant is in sole possession of rigorous testing of its products and knew or should have known that its products contained dangerously high amounts of toxic heavy metals.

139.    Defendant misrepresented material facts partly to pad and protect its profits.  The benefits of falsely touting its baby foods as healthy and safe to eat came at the expense of Plaintiffs and Class Members.

140.    Plaintiffs and Class Members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth. Plaintiffs' and Class Members' actions were justified given Defendant's misrepresentations. Defendant was in exclusive control of material facts, and/or such facts were not known to average members of the public.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

141.    Plaintiffs and Class Members sustained injury due to the purchase of baby foods that did not live up to representations.  Plaintiffs and Class Members sustained injury when they inadvertently fed their babies foods containing dangerous heavy metals.

142.    Plaintiffs and Class Members are entitled to recover full or partial refunds due to Defendant's misrepresentations, amounts to be proven at trial.  Plaintiffs and Class Members are also entitled to recover the costs and expenses they incurred in purchasing alternative baby foods due to Defendant's misrepresentations, also amounts to be determined at trial.  Plaintiffs and Class members are entitled to recover costs and expenses associated with ensuring that their babies have not been harmed, as well as any costs and expenses associated with any treatments for Plaintiffs' and Class Members' babies, amounts to be determined at trial.

143.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and Class Members' rights and well-being, as well as the well-being of Plaintiffs' and Class Members' babies, and in part to enrich itself in California at the expense of consumers.  Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor baby foods.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

### C.  **THIRD CAUSE OF ACTION**

VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

*Cal. Civ. Code § 1750, et seq.*

144.    Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-143, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

145.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

33

COMPLAINT AND DEMAND FOR JURY TRIAL

146.    In accordance with the liberal application and construction of the CLRA, application of the CLRA to all Class Members is appropriate, given that Defendant's conduct as described herein originated from California, and consumers purchased or used the involved baby foods in California.

147.    Defendant is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "goods" as defined by Civil Code §§ 1761(a) and 1770.

148.    Plaintiffs and the Class Members are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

149.    Defendant's acts and practices were intended to and did result in the sales of products to Plaintiffs and the Class Members in violation of Civil Code § 1770, including:

    i.    Representing that goods or services have characteristics and uses that they do not have;

    ii.    Representing that goods or services are of a particular standard, quality, or grade when they are not;

    iii.    Advertising goods or services with intent not to sell them as advertised; and

    iv.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

150.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

151.    Had Defendant disclosed to Plaintiffs and Class Members that its baby foods contained toxic heavy metals, often in amounts surpassing those recommended or deemed safe by multiple regulatory bodies, Plaintiffs and the Class Members would have made different purchasing decisions.

152.    Had Defendant disclosed the truth, it would have been unable to continue in the same course of business.  So, Defendant represented that its baby foods were healthy, nutritious and safe for consumption by babies, who have been shown to be extremely susceptible

34

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

1    to the harsh effects of exposure to toxic heavy metals.  Plaintiffs and the Class Members acted

2    reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they

3    could not have discovered.

4           153.    As a direct and proximate result of Defendant's violations of California

5    Civil Code § 1770, Plaintiffs, Class Members, and their babies have suffered and will continue to

6    suffer injury, ascertainable losses of money or property, and monetary and non-monetary

7    damages. Such monetary and non-monetary damages have arisen and will arise from not receiving

8    the benefit of the bargain in purchasing Defendant's baby foods, and increased time and expense

9    in having to purchase safer alternatives, determining whether their children have been negatively

10   affected by consuming Defendant's baby foods, and medical, behavioral, educational, or other

11   types of treatment for children who have been negatively affected by consuming Defendant's

12   baby foods.

13          154.    In satisfaction of the requirements of California Civil Code § 1782(a),

14   Plaintiffs will send written notice to Defendant via certified or registered mail contemporaneously

15   with the filing of this Complaint.  Plaintiffs will seek to amend the Complaint to seek relief under

16   this cause of action once the requisite 30-day notice period has expired and to state that Plaintiffs

17   gave Defendant proper notice.

18                         **D.  FOURTH CAUSE OF ACTION**

19               VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

20                      *Cal. Bus. & Prof. Code § 17500 et. seq.*

21          155.    Plaintiffs, individually and on behalf of the Class, repeat and allege

22   Paragraphs 1-154, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf

23   of any potential Subclasses.

24          156.    Defendant's acts and practices, as described herein, have deceived and/or

25   are likely to continue to deceive class members and the public.  As discussed, Defendant

26   misrepresented its baby foods and the fact that they are healthy, nutritious and safe for babies to

27   consume.  It concealed the fact that its baby foods contain high traces of toxic heavy metals such

28   as arsenic, lead, cadmium and/or mercury.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

35

**COMPLAINT AND DEMAND FOR JURY TRIAL**

157.    Defendant disseminated uniform advertising regarding the contents of its baby foods in California.    The advertising was inherently unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq.  Such advertisements were intended to and likely did deceive the public for the reasons detailed herein.

158.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant continues to conceal the true nature of its baby foods.  Not only has Defendant refused to cooperate with the Subcommittee's efforts to investigate the true nature of baby foods on the market, even after it was revealed through independent testing that Defendant baby foods do contain toxic heavy metals, Defendant failed to remove its tainted products from distribution, failed to let consumers know precisely what reforms, if any, it has been making to its standards to ensure that its baby foods will contain less-to-no toxic heavy metals, and failed to instigate a public information campaign to alert consumers of the fact that its baby foods contain toxic heavy metals.  As such, Defendant continues to misrepresent the true nature of its products and continues to deceive consumers.

159.    In making and disseminating the statements alleged herein, Defendant knew or should have known that its advertisements were untrue and misleading in violation of California law.  Plaintiffs and other Class Members based their purchasing decisions on Defendant's omitted and misrepresented material facts.  The revenues to Defendant attributable to products sold in those false and misleading advertisements amount to millions of dollars.  Plaintiffs and Class Members were injured in fact and lost money and property as a result.

160.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code § 17500, *et seq.*

161.    As a result of Defendant's wrongful conduct, Plaintiffs and the Class Members were induced to purchase Defendant's baby foods.  Plaintiffs and the Class Members are therefore entitled to restitution as appropriate for this cause of action.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

162.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

### E.  FIFTH CAUSE OF ACTION

VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

*Cal. Bus. & Prof. Code § 17200, et seq.*

163.    Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-162, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

164.    In accordance with the liberal application and construction of the Unfair Competition Law ("UCL"), application of the UCL to all Class Members is appropriate, given that Defendant's conduct as described originated in California and Class Members purchased, used, and/or sustained damage to the baby foods involved in California.

165.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

166.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

    i.    Knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

    ii.    Misrepresenting material information to consumers regarding Defendant's baby food products and their purported ability to offer a dose of nutrition to a baby's diet;

    iii.    Concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies; and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

37

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

iv.    Using uniform, deceptive business practices, such as telling consumers via its websites or otherwise implying that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results.

167.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1750, *et seq.*, which include:

i.    Knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

ii.    Misrepresenting material information to consumers regarding Defendant's baby food products and their purported ability to offer a dose of nutrition to a baby's diet;

iii.    Concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies; and

iv.    Using uniform, deceptive business practices, such as telling consumers via its websites or otherwise implying that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results.

168.    Defendant violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of its baby foods.  As alleged more fully herein, Defendant's marketing and sale of baby foods, and more specifically its failure to inform customers of the presence of toxic heavy metals in said baby foods, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein.  Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices.  Defendant's conduct is ongoing and continues to this date.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

1    169.    Defendant violated § 17200's prohibition against unfair conduct by failing

2    to inform its customers about the true nature of its baby foods, and engaging in a pattern or

3    practice of concealing those facts and urging its customers to purchase more of its baby foods

4    based on the false belief that the foods remain safe to consume for babies, thereby depriving

5    consumers of sufficient information to make an informed decision when purchasing baby food.

6    This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical,

7    oppressive, and unscrupulous as the gravity of the conduct – selling baby foods that, in many

8    instances, put children at risk for severe developmental and health problems.  The impact of the

9    practice against Plaintiffs and the Class Members far outweighs any possible justification or

10   motive on the part of Defendant.  The impact on Plaintiffs and Class Members has been described.

11   Defendant can have no possible justification for including a false inducement to purchase its

12   products.  Plaintiffs and Class Members could not reasonably have avoided this injury because

13   they relied on Defendant's advertising as to the quality and characteristics of the products being

14   sold, as all consumers who rely on the verity of product advertising must do.  Defendant's false

15   advertising is also violative of public policy, as expressed in the CLRA.

16   170.    Specifically, Plaintiffs and Class Members paid hefty prices for

17   Defendant's baby food products, believing that they were the most optimal options for growing

18   children.  Defendant has refused to admit that its products are indeed dangerous, and it continues

19   to market and sell its products in California.  Defendant has engaged in this conduct at the expense

20   of its customers' rights – Defendant could have provided customers with full information about

21   its baby foods' actual contents, but it did not.

22   171.    Defendant engaged in this conduct to gain an unfair commercial advantage

23   over its competitors.  It misrepresented critical and material information to, and omitted critical

24   and material information from, Plaintiffs and Class Members, its competitors, and the

25   marketplace – all to its unfair competitive advantage.

26   172.    Defendant's business practices also constitute fraudulent conduct because

27   they were likely to deceive, and did deceive, Class Members into purchasing certain baby foods

28   with ingredients that could not allow for the baby foods to benefit children as advertised.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

39

COMPLAINT AND DEMAND FOR JURY TRIAL

1    173.    Defendant's business practices, as alleged herein, also constitute

2    fraudulent conduct because Defendant did not deliver the product it advertised.

3    174.    Defendant's representations and omissions in California were material

4    because they were likely to deceive reasonable consumers.

5    175.    Plaintiffs and Class Members did not know that the baby foods contained

6    toxic heavy metals.  Accordingly, Defendant should not have omitted and/or misrepresented the

7    facts surrounding the baby food's true contents.

8    176.    Defendant omitted and misrepresented material information pertaining to

9    its baby foods' true contents to defraud the Class Members' by, among other things, maintaining

10    market share, convincing Plaintiffs and Class Members to purchase more of its products, and to

11    otherwise ensure that Plaintiffs and Class Members would not discover Defendant's underlying

12    fraud regarding its omissions and misrepresentations regarding the baby food products.  As a

13    result, Defendant violated Cal. Penal Code § 502.

14    177.    Defendant's fraud led to consumers paying for products that did not live

15    up to reasonable expectations.  Consumers likely paid more for baby foods than they otherwise

16    should have, and/or purchased baby foods manufactured by Defendant instead of one of

17    Defendant's competitors.  None of this would have been necessary had consumers known the

18    truth.

19    178.    As a direct and proximate result of Defendant's unfair, unlawful, and

20    fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money or

21    property.  They did not receive the benefit of the bargain in purchasing the baby foods, and they

22    spent their own time and money dealing with purchasing safer baby food alternatives.

23    Additionally, Plaintiffs' and Class Members' babies were harmed or placed at risk of harm by

24    consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

25    179.    Defendant acted intentionally, knowingly, and maliciously to violate

26    California's Unfair Competition Law.  It recklessly disregarded Plaintiffs' and Class Members'

27    rights, and the health of Plaintiffs' and Class Members' babies.  Defendant's knowledge of its

28    ///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

40

COMPLAINT AND DEMAND FOR JURY TRIAL

baby foods containing toxic heavy metals put it on notice that its foods were not being sold as advertised.

180.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

## F.  SIXTH CAUSE OF ACTION

### FRAUD

181.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-180, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

182.     At the time Plaintiffs and Class Members purchased Defendant's baby foods, Defendant did not disclose, but instead concealed and misrepresented, the true contents of its baby foods as discussed herein.

183.     Defendant affirmatively misrepresented its baby foods' contents by telling Plaintiffs and the Class Members that its baby foods were healthy, nutritious, and safe for babies and children to eat, all of which are not true.

184.     Defendant omitted and concealed the fact that testing showed that its foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury.

185.     Defendant knew, or should have known, that its advertisements falsely portrayed to the consuming public that its baby foods were safe for consumption.

186.     Defendant knew that its omissions and misrepresentations regarding the contents of its baby foods were material since it dedicated advertising to create such advertisements.  Further, a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

187.     Defendant, through its advertisements, has proven that it in fact intended to deceive Plaintiffs and Class Members.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

41

COMPLAINT AND DEMAND FOR JURY TRIAL

188.    Plaintiffs and Class Members did not know, nor could they have known through reasonable diligence, about Defendant's fraud.  They also could not have known that companies as large as Defendant would repeatedly lie to the consuming public about its products' true nature without facing consequences.  They also could not have known that baby food manufacturers like Defendant produce baby foods containing toxic heavy metals.  Only after purchasing Defendant's products and the release of the February 2021 Subcommittee report did Plaintiffs and the Class Members become aware of Defendant's fraud.

189.    Plaintiffs and Class Members are reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

190.    Plaintiffs and Class Members had a right to rely upon Defendant's representations because Defendant maintained monopolistic control over the true circumstances of its products' contents.  Defendant selected the information available to the public regarding the contents of its products.

191.    Plaintiffs and Class Members sustained damages in relying on Defendant's omissions and misrepresentations.  Plaintiffs and Class Members have sustained actual losses and damages in a sum to be determined at trial, including punitive damages.

### G.  SEVENTH CAUSE OF ACTION

### CONSTRUCTIVE FRAUD

192.    Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-191, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

193.    At the time Plaintiffs and Class Members purchased Defendant's baby foods, Defendant did not disclose the true contents of its baby foods – namely, the presence of toxic heavy metals.

194.    Further, Defendant affirmatively represented that its baby foods were healthy, nutritious and safe for consumption.

195.    Defendant knew, or should have known, that the contents and safety of its baby foods were falsely portrayed to the consumer public.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

42

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

196.    Defendant also knew that its omissions and misrepresentations regarding its baby foods were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

197.    Defendant had an obligation not to omit or misrepresent its baby foods' true contents because: (a) it had sole possession of information regarding the true contents of its baby foods; (b) it made affirmative misrepresentations regarding its baby foods' safety that misled consumers; (c) Plaintiffs and Class Members reasonably relied upon Defendant to make full disclosures based upon the relationship between Plaintiffs and Class Members; (d) Defendant had a duty to ensure the accuracy of the representations it disseminated regarding the baby foods' true contents; (e) Plaintiffs and the Class Members had no way of knowing about Defendant's fraud until after purchasing the baby foods and the release of the February 2021 Subcommittee report; (f) Defendant was on notice of its baby food's toxicity as it was aware of the included toxic heavy metals in its baby foods; and (g) Defendant was further put on notice of its baby food's toxicity when the House Subcommittee released reports in February 2021 indicating the presence of toxic heavy metals in its baby foods.

198.    Plaintiffs and Class Members did not know—nor could they have known through reasonable diligence—about the presence of toxic heavy metals, nor could they have known about this fact when Defendant repeatedly advertised that its foods were healthy, natural and safe for consumption.

199.    Plaintiffs and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions and inadvertently or intentionally exposing babies and children to toxic heavy metals.

200.    Plaintiffs and Class Members had a right to rely upon Defendant's representations (and corresponding omissions) because Defendant maintained monopolistic control over what information regarding its baby foods was made known to the public.

201.    Defendant breached its duty to Plaintiffs and Class Members to make full disclosures of the fact that its baby foods do, in fact, contain dangerous, heavy toxic metals in varying quantities.

43

COMPLAINT AND DEMAND FOR JURY TRIAL

202.     Plaintiffs and Class Members sustained damages as a result of their reliance on Defendant's omissions, misrepresentations, and breach of its duty. Plaintiffs and Class Members have sustained actual losses and damages in a sum to be determined at trial.

## H. <u>EIGHTH CAUSE OF ACTION</u>

BREACH OF EXPRESS WARRANTY

*Cal. Comm. Code § 2313, et seq.*

203.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-202, as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

204.     As set forth herein, Defendant made express representations to Plaintiffs and the Class that its baby foods were healthy, nutritious, and safe for consumption.

205.     These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

206.     There was a sale of goods from Defendant to Plaintiffs and the Class Members.

207.     On the basis of these express warranties, Defendant sold to Plaintiffs and the Class Members baby foods.

208.     Defendant knowingly breached the express warranties by including toxic heavy metals in its baby foods.

209.     Defendant was on notice of this breach as it was aware of the included toxic heavy metals in its baby foods.

210.     Defendant was also on notice of this breach when the House Subcommittee released reports in February 2021 indicating the presence of toxic heavy metals in its baby foods.

211.     Privity exists because Defendant expressly warranted to Plaintiffs and the Class that its baby foods were healthy, nutritious, and safe for consumption.

212.     Plaintiffs and the Class members reasonably relied on the express warranties by Defendant.

///

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

213.     As a result of Defendant's breaches of its express warranties, Plaintiffs and the Class sustained damages as they paid money for the baby foods that were not what Defendant represented.

214.     Plaintiffs, on behalf of themselves and the Class, seek actual damages for Defendant's breach of warranty.

## I.   <u>**NINTH CAUSE OF ACTION**</u>

### BREACH OF IMPLIED WARRANTY

*Cal. Comm. Code § 2314, et seq.*

215.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-214 as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

216.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class members.

217.     There was a sale of goods from Defendant to Plaintiffs and the Class members.

218.     As set forth herein, Defendant marketed its baby foods to Plaintiffs and the Class as healthy, nutritious and safe options for babies.  But the baby foods did not conform to these affirmations and promises because they contained toxic heavy metals at undisclosed, alarming levels.  These very promises became part of the basis of the bargain between the parties and thereby constituted a series of implied warranties.

219.     Defendant breached the implied warranties by selling the baby foods that failed to conform to the promises or affirmations of fact made on containers or in advertisements because each product contained toxic heavy metals.

220.     Defendant was on notice of this breach as it was aware of the inclusion of toxic heavy metals in its baby foods.

221.     Defendant was also on notice of this breach when the House Subcommittee released reports in February 2021 indicating the presence of toxic heavy metals in its baby foods.

///

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

45

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

222.     Privity exists because Defendant impliedly warranted to Plaintiffs and the Class members through the warranting, packaging, advertising, marketing, and labeling that its baby foods were healthy, nutritious, and safe for consumption and by failing to make any mention of toxic heavy metals.  Plaintiffs and the Class then relied on these implied warranties in making their purchases.

223.     As a result of Defendant's breach of its implied warranties of merchantability, Plaintiffs and the Class sustained damages as they paid money for the baby foods that were not what Defendant represented.

224.     Plaintiffs, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

## J.   TENTH CAUSE OF ACTION

### QUASI-CONTRACT / UNJUST ENRICHMENT

225.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-224 as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

226.     Plaintiffs and Class Members purchased Defendant's baby foods, and those baby foods were not as Defendant represented them to be, enticing Plaintiffs and the Class to purchase the baby foods.   Had Plaintiffs and the Class known of the fact that the baby foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury, they would not have purchased Defendant's baby food, but would rather purchase baby foods manufactured by one of Defendant's competitors.  Furthermore, Plaintiffs would not have had to pay for safer alternatives after learning of the true contents of Defendant's baby foods.

227.     Accordingly, Plaintiffs and Class Members were damaged, and Defendant was unjustly enriched, due to fraud, by the purchase price of those baby foods containing toxic heavy metals.

228.     Plaintiffs and Class Members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

///

**COMPLAINT AND DEMAND FOR JURY TRIAL**

229.    Furthermore, Defendant's conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class.  Defendant is therefore liable to pay punitive damages under California law.

## VII.    PRAYER FOR RELIEF

230.    WHEREFORE, Plaintiffs, individually and on behalf of all other Class Members, respectfully requests that the Court enter an Order:

i.    Declaring that this action is a proper class action, certifying the Classes and/or Subclasses as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

ii.    Enjoining Defendant from continuing the unfair business practices alleged in this Complaint;

iii.    Ordering Defendant to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other Class Members, as allowable by law;

iv.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

v.    Ordering Defendant to pay attorneys' fees and costs of suit; and

vi.    Ordering such other and further relief as may be just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.

Dated: April 1, 2021                              **WILSHIRE LAW FIRM**


By */s/ Cinela Aziz*
      Cinela Aziz
      *Attorney for Plaintiffs and the Putative*
      *Class*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL